UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES OUTLAW,

    Plaintiff,

v.                                                                  Civil No. 04-CV-10353-BC

COMMISSIONER OF                                  DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                                    MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**AMENDED**[1]
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the

---

[1] This Report and Recommendation is filed to amend the Report and Recommendation which was e-filed earlier this date without a signature.

Commissioner's decision denying Plaintiff's claim for period of disability and disability insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 51 years of age at the time of the most recent administrative hearing and has completed a high school education. (Tr. at 460-61.) Plaintiff's relevant work history included 26 years work for General Motors. (Tr. at 71.)

Plaintiff filed the instant claim on July 23, 2002, alleging that he became unable to work on February 15, 2002. (Tr. at 60-62.) The claim was denied at the initial stage. (Tr. at 24.) In denying Plaintiff's claim, the Defendant Commissioner considered mild radiculopathy and degenerative disc disease as possible bases of disability. (*Id.*)

On December 4, 2003, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Douglas Jones, who considered the case *de novo*. In a decision dated May 24, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 13-22.) Plaintiff requested a review of this decision on June 7, 2004. (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner on November 26, 2004, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On December 15, 2004, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889

F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ

or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott*, 905 F.2d at 923; *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

**D.     Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that on August 23, 2001, Plaintiff underwent an electromyographic examination performed by Dr. Wilbur Boike, M.D., at Genesys Back Care Center due to complaints of back and bilateral leg pain. The examination revealed normal strength in the lower extremities but was also consistent with very mild chronic right L5 radiculopathy.[2] (Tr. at 127.) An MRI of the lumbar spine done on September 6, 2001, however, showed no evidence of disc herniation in the lumbar region and no spinal stenosis. (Tr. at 138.)

On September 13, 2001, Plaintiff was seen by Dr. Boike for an examination. Plaintiff reported that his low back pain and leg pain all began in 1999 when he was lifting something at work and slipped and fell. The doctor reported that Plaintiff's neurological examination was normal, but that a general examination of the lumbosacral spine revealed significantly reduced flexibility in extension, lateral flexion and lateral rotation. Dr. Boike felt that Plaintiff was suffering with musculoskeletal low back pain and that physical therapy would be helpful. (Tr. at 125.)

Between August 2001 and August 2002, Plaintiff saw nurses at the GM Bristol Road plant on a frequent basis. (Tr. 156-413.) Their findings are similar to those reported by the physicians who examined and treated Plaintiff.

---

[2]Radiculopathy is a disease or abnormality of a dorsal or ventral (sensory or motor) spinal nerve root from the point where it merges with the spinal cord (or brain stem) to the point where it joins its companion root (a motor or a sensory) to form a spinal nerve. 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE R-10.

On September 18, 2001, Plaintiff had an MRI of the right shoulder due to persistent popping and clicking since a work injury six months earlier. This test was negative, and no rotator cuff tear was seen. (Tr. at 154.)

On September 24, 2001, Plaintiff reported to Genesys Back Care Center for a physical therapy initial lumbar assessment. Plaintiff's gait appeared to be abnormal with decreased bilateral trunk rotation. However, Plaintiff was able to heel walk, toe walk, squat, and come to a standing position with apparent difficulty. Plaintiff was able to go from sitting to standing position without difficulty. The therapist felt that Plaintiff was embellishing his complaints of pain. Plaintiff indicated that he understood the physical therapy program and wanted to proceed. A physical therapy program was established, and Plaintiff was to participate Monday through Friday for four weeks. (Tr. at 121-24.)

Following two weeks of physical therapy, Plaintiff was to participate in his first day of cardiovascular exercise. Plaintiff was uncooperative at this session and refused to undertake treadmill exercises as directed. The therapist then requested that Plaintiff undertake various stationary bicycle exercises. Plaintiff ultimately refused to participate and removed his heart monitor and watch. The therapist expressed his concern over Plaintiff's refusal to do the exercises designed to help him, and when the Plaintiff left, he was observed ambulating across the parking lot and getting into his car without any apparent difficulty. (Tr. at 117.) Despite Plaintiff's behavior, the therapist felt that he was making progress and exhibiting increased range of motion. The therapist felt that prognosis was poor for physical therapy due to Plaintiff's attitude. However, therapy was to continue per Dr. Boike's instructions. (Tr. at 119.)

On December 6, 2001, Plaintiff was seen by Dr. Jeffrey R. Levin, M.D., for a neurological examination. The doctor reviewed the results of previous medical tests and examinations. (Tr. at

7

142.) The doctor's physical examination revealed some pain in the AC joint of the right shoulder and some limitation in range of motion. Although Plaintiff exhibited some muscle weakness in the arms, orthopedic signs were negative, and no reflex or sensory changes were noted in the arms. Straight leg raising tests were positive for both legs, and muscle weakness was seen in the right foot. (*Id*.) Plaintiff was able to walk normally, although he exhibited some difficulty walking on the right heel and toe. (Tr. at 143.) The doctor felt that previous work limitations should continue. The doctor also felt that Plaintiff could benefit from epidural steroid injections. (*Id*.)

On January 6, 2002, Plaintiff underwent an MRI of the cervical spine conducted at the request of Dr. Levin. (Tr. at 442.) This scan indicated a bulging of the C6-7 intervertebral discs, as well as bone spur formation, which led to narrowing of the neuro pathways. Other disc levels appeared normal, and Plaintiff's spinal nerves appeared normal. (*Id*.)

Electromyographic testing conducted in January 2002 at the request of Dr. Jeffrey Levin revealed carpal tunnel syndrome on the left, cubital tunnel syndrome on the left, and C6-7 radiculopathy. (Tr. at 140.)

Plaintiff was seen on April 15, 2002, by Dr. Levin. On examination, Plaintiff exhibited pain in the AC joint of the right shoulder, limitation in right shoulder range of motion, ulnar weakness bilaterally, pain with straight leg raising, worse in the right leg, weakness in the foot, decreased sensation in the right foot, and slightly decreased ankle jerk. The doctor's impressions after examination were rotator cuff tendinopathy, bilateral carpal tunnel syndrome, and L5-S1 radiculopathy. Although the doctor felt Plaintiff should not be working, Dr. Levin continued previous work restrictions and felt that steroid injections could be helpful. (Tr. at 139.)

Records of Plaintiff's employer indicate that at various times between November 2001 and July 2004, Plaintiff was restricted from standing for more than six hours a day, lifting more then

ten or twenty pounds, work at or above shoulder level, or bending more than 45 degrees. (Tr. at 145-147, 149-153.)

On November 6, 2002, Plaintiff underwent a psychological evaluation conducted by Dr. Leonard Balunas, Ph.D. Plaintiff stated that he lived by himself. (Tr. at 423.) He stated that in general he got along well with his coworkers and supervisors. The psychologist recounted that Plaintiff was pleasant, polite and cooperative. Plaintiff stated that he did his own cooking, driving, and limited grocery shopping. (Tr. at 424.) Plaintiff also stated that he undertook prescribed exercises in order to strengthen his back. The psychologist felt that Plaintiff was alert, oriented and cooperative, although he appeared mildly anxious. Plaintiff's speech was found to be spontaneous, coherent and relevant, and Plaintiff presented ideas in a logical and well organized manner. (*Id*.) Plaintiff was diagnosed with a major depressive disorder, single episode, and moderate in severity. The psychologist assessed a GAF[3] score of 55. (Tr. at 426.)

On September 16, 2003, Plaintiff underwent a physical examination conducted at the request of the Disability Determination Service by Dr. Neil A. Friedman. On examination, Plaintiff's cervical spine indicated reduction of range of motion, and flexion produced complaints of pressure. (Tr. at 446.) Plaintiff's shoulders also evidenced decreased range of motion. The doctor was able to passively move Plaintiff's shoulder joints through full range of motion, although Plaintiff reported that these exercises produced pain. (*Id*.) Plaintiff evidenced full range of motion in the elbows, wrists and finger joints. Straight leg raising tests were negative, and deep

---

[3]"Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). A GAF Scale of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers).

tendon reflexes were symmetric in the legs. Range of motion of the major joints of the leg was normal and pain free. (*Id*.) The doctor noted that Plaintiff walked with a slow but otherwise normal gait. (Tr. at 447.) Plaintiff was able to walk on heels and toes and squat and arise without apparent difficulty. Plaintiff was able to step onto and off a nine inch high stepstool using either leg without difficulty or complaint. (*Id*.) Plaintiff was able to bend forward 70 of the normal 90 degrees, extend his back 10 degrees, and flex his back 15 degrees.

In a statement of ability to do work-related activities (physical) completed by Dr. Friedman, no exertional limitations in lifting, carrying, standing, walking, sitting, pushing or pulling were indicated by the doctor. (Tr. at 448-49.) The doctor felt that Plaintiff could undertake climbing, balancing, kneeling, crouching, and crawling activities frequently, and he found no limitations in manipulative, visual or communicative functions. (Tr. at 450.)

At the administrative hearing, Plaintiff testified that his last job involved placing instruction sheets to dealer mechanics relating to the installation of parts into plastic bags. Plaintiff stated that he could do this job either sitting or standing. Plaintiff stated that this job required lifting no more than 20 pounds. (Tr. at 478-79.)

At the administrative hearing, a vocational expert (VE) testified. She characterized Plaintiff's work as unskilled and varied between sedentary to heavy in exertion. (Tr. at 482-83.) In response to a hypothetical question, presuming a person of Plaintiff's circumstances, limited to performing light exertional work which required only occasional bending, no use of vibrating tools or forceful or sustained grasping of objects, the VE stated that "as [the plaintiff] actually performed them, he could do the jobs as he described that would be in the light category where he was doing the packaging and the sorting." (Tr. at 483-84.) The VE also identified 2,200 light exertion unskilled inspector and 1,700 information clerk jobs consistent with these hypothetical conditions.

10

The VE also identified 4,000 inspector and 4,000 security guard jobs consistent with these hypothetical conditions. (*Id.*) The VE testified that the jobs that she identified were unskilled, simple in nature, and did not require detailed instructions or extended periods of concentration. (Tr. at 485.)

### E.      ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 21.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 22.) At step four, the ALJ found that Plaintiff possessed the residual functional capacity for a limited range of light exertion work and concluded that Plaintiff could return to his previous light exertion packing work. (*Id.*) As a result, the ALJ did not reach step five of the analysis.

### F.      Analysis and Conclusions

#### 1.      Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 22.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

11

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

The ALJ concluded that Plaintiff had the ability to return to his prior work. This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability as he could return to his previous work. Step Four "necessarily entails a comparison of the physical demands of the claimant's past relevant work with [his] present mental and physical capacity." *Veal v. Bowen*, 833 F.2d 693, 697 (6th cir. 1987). *Walters*, 127 F.3d at 528. The Commissioner's regulations state:

> If you can do your previous work (your usual work or other applicable past work), we will determine that you are not disabled. However, if your residual functional capacity is not enough to enable you to do any of your previous work, we must still decide if you can do any other work. . . .

20 C.F.R. § 404.1561.

In *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074 (6th Cir. 1987), the Sixth Circuit clarified the standard of proof necessary for a showing that a social security benefits claimant is unable to return to former work:

> Rather, the Act requires that he show that his impairments are so severe that he is "unable to do his previous work. . . ." 42 U.S.C. § 423(d)(2)(A). He must prove "an inability to return to his former <u>type</u> of work and not just to his former job." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (emphasis in original). *See also Gray v. Heckler*, 760 F.2d 369, 273 (1st Cir. 1985); *De Loatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983); *Jock*, 651 F.2d at 135.

*Studaway*, 815 F.2d at 1076.

The Court affirmed the denial of benefits concluding: "Because the relevant inquiry is whether Studaway could return to his past type of work rather than his past job, we are compelled to affirm." *Id*.

In determining the level of exertion required by prior work, the ALJ may normally look to the job descriptions contained in the <u>Dictionary of Occupational Titles</u>. *De Loatche v. Heckler*, 715 F.2d 148 (4th Cir. 1983). However, the job categories of the Dictionary may be overcome by evidence demonstrating that the particular duties of plaintiff's prior work were not those envisioned by the framers of the Dictionary. *Carter v. Sec'y of Health & Human Servs.*, 834 F.2d 97 (6th Cir. 1987).

On this record I suggest that substantial evidence supports the ALJ's findings. Although the doctors who treated and examined Plaintiff found impairments, I suggest that none of those impairments were inconsistent with the residual functional capacity assessment made by the ALJ. Dr. Levin, for instance, examined Plaintiff on repeated occasions and consistently recommended work-related exertional limitations which fall within the range of the Commissioner's definition of light work. The ALJ discounted Dr. Levin's statement that Plaintiff should not be working. The

Sixth Circuit has held that treating physicians' opinions "are only given such deference when supported by objective clinical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th cir. 2003). A treating physician's opinion may thus be rejected if there is good reason to do so. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). Dr. Levin's objective medical findings and his work-related exertional recommendations provide, I suggest, precisely the type of "good reason" sufficient to justify the ALJ in discounting the doctor's opinion. Similarly, the ALJ rejected an opinion by Dr. Toroyan, which appears to suggest that Plaintiff is totally disabled. (Tr. at 144.) I suggest that the ALJ committed no error in discounting this opinion for the reason that it is first of all equivocal. The form completed by the doctor indicates that the felt Plaintiff was disabled for approximately seven months in 2002 and suggested that the case be reviewed. Moreover, I find little if any support on this record that Dr. Toroyan in fact treated Plaintiff on any consistent basis.

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, and in particular, findings and assessments of Dr. Levin. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v.*

*Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). On this record, I suggest that Plaintiff's credibility is seriously undercut by the observations made by Plaintiff's refusal to engage in physical therapy, coupled with the observations made by his treating physical therapist. (Tr. at 117.)

Counsel for Plaintiff argues that the ALJ improperly delegated his responsibility to the VE. My review of the record reveals no such abdication of responsibility. Rather, the ALJ engaged the VE in hypothetical questions of a nature similar to those frequently seen in social security disability hearings. Counsel for Plaintiff also argues that the ALJ erred because he must find Plaintiff capable of returning to the same job he had before. This argument, I suggest, misconstrues the applicable law in this circuit. As noted earlier, "the relevant inquiry is whether [Plaintiff] could return to his past type of work rather than his past job." *Studaway*, 815 F.2d at 1076. This argument, I suggest, may be a function of counsel's misunderstanding of the role of the Dictionary of Occupational Titles in this case. Rather than relying on the Dictionary itself, I suggest that as in *Carter, supra*, Plaintiff's own testimony relating to the details of the type of work to which the ALJ found Plaintiff capable of returning, overcame the definitions set forth in the Dictionary.

As to Plaintiff's claims of disabling mental impairments, the evidence in this case falls considerably short of that found in this circuit sufficient to uphold a finding of disability. *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988); *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991); *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992). I suggest, instead, that the administrative record in this case is much more consistent with those cases in this circuit finding that allegations of disabling mental impairments failed to justify the award of benefits. *Foster v. Bowen*, 853 F.2d 483, 491 (6th Cir. 1988); *Vaughn v. Sec'y of Health & Human Servs.*, No. 89-2259, 1990 WL 120967 (6th Cir. Mich. August 21, 1990); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990); *Hogg v. Sullivan*, 987 F.2d 328, 333 (6th Cir. 1992). In addition, there is in this record no indication that mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with

supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker*, 980 F.2d at 1068.

After review of the record, I conclude that the decision of ALJ Jones which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: July 13, 2005 | s/ *Charles E Binder*<br>CHARLES E. BINDER<br>United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on Janet Parker, Mikel Lupisella and Honorable David M. Lawson.

|  |  |
|---|---|
| Dated: July 13, 2005 | By     s/Mary E. Dobbick<br>Secretary to Magistrate Judge Binder |